U.S. COURT OF APPEALS
RECEIVED
CLERK
JUL 0 2 2025
ATLANTA, GA

# THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

---

No. **20-14254** - AA

DC DKT NO.: 3:18-cr-89

---

**UNITED STATES OF AMERICA,**

**Appellee,**

**v.**

**REGINALD BROWN,**

**Appellant.**

---

**APPELLANT'S INITIAL BRIEF**

---

Reginald L. Brown,
Pro Se
6167 Bassanova Court
Jacksonville, FL 32209
(904)444-2588
reginaldLbrown@yahoo.com

## CERTIFICATE OF INTERESTED PERSONS/ CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26.1 (2021), counsel for Appellant, REGINALD BROWN, hereby files this Certificate of Interested Persons:

1) BELL, Thomas - Trial Counsel for Appellant

2) BROWN, Katrina - Co-Defendant

3) CEBALLOS, Alan - Sentencing Counsel for Appellant

4) COOLICAN, Michael-Assistant U.S. Attorney

5) DUVA, Tyson - Assistant U.S. Attorney

6) GLOBAR, Bonnie - Assistant U.S. Attorney

7) HERNANDEZ, James - Appellate Counsel for Katrina Brown

8) HOWARD, Marcia M. - U.S. District Court Judge

9) KLINDT, James - U.S. District Court Judge

10) LINNEN, Valarie - Appellate Counsel

11) BizCapital BIDCO, LLC - Victim

12) City of Jacksonville, Florida - Victim

TABLE OF CONTENT

CERTIFICATE OF INTERESTED PERSONS/........................................C-1

CORPORATE DISCLOSURE STATEMENT..........................................C-1

STATEMENT OF CONTENTS......................................................... i

STATEMENT REGARDING ORAL ARGUMENT .................................... ii

STATEMENT OF JURISDICTION ....................................................... iii

TABLE OF CITATIONS ......................................................................... iv

STATEMENT OF THE ISSUES................................................................ 1

STATEMENT OF THE CASE.................................................................. 6

SUMMARY OF THE ARGUMENT............................................................ 8

LEGAL STANDARDS/ARGUMENT.......................................................... 9

I. Direct violation of the statutory procedure outlined in **18 U.S.C. § 3664(d)(5)**. ~~11~~ 10

II. Substitution without evidence violates **18 U.S.C § 3664(e)**.............................. ~~13~~ 10

III. **Rule 27** governs the procedures for filing and responding to motions in court..... ~~19~~ 21

CONCLUSION..........................................................................................29

CERTIFICATE OF SERVICE ....................................................................30

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument to assist this Court in deciding the issues presented in this appeal.

## STATEMENT OF JURISDICTION

This Court has appellate jurisdiction to review the final judgment rendered by the district court pursuant to Title 28, Section 1291, United States Code (2021). Following a Jury Trial, the district court adjudicated Mr. Brown guilty, entering judgment and sentence on November 3, 2020. (Dkt.448) Mr. Brown noticed the instant direct appeal on November 11, 2020. (Dkt.454)

## TABLE OF CITATIONS

### Statutes

| Authority | Description | Page(s) |
|---|---|---|
| 18 U.S.C. § 3664(d)(5) | Requires the court to determine restitution within 90 days after sentencing. | 3,7,8,9,10,12 |
| 18 U.S.C. § 3664(e) | Places the burden of proof regarding the amount of restitution on the government. | 9,10,13,15 |

### Rules

| Authority | Description | Page(s) |
|---|---|---|
| Federal Rule of Appellate Procedure 27 | Govern procedure for filing motions in the Court of Appeals. | 13,14,17,21,27 |

| Case | Citation | Description | Page(s) |
|---|---|---|---|
| **Brady v. Maryland** | 373 U.S. 83 (1963) | Established that suppression of material exculpatory evidence by the prosecution violates due process. | 18 |
| **Dolan v. United States** | 560 U.S. 605 (2010) | Held that restitution orders issued after the 90-day deadline can be valid if the intent to impose was clear. | 10 |
| **Dola v. United States** | 889 F.3d 1275 (11th Cir. 2018) | Addressed evidentiary standards and the government's burden in post-conviction proceedings. | 11 |
| **United States v. Sheffield** | 939 F.3d 1274 (11th Cir. 2019) | Error found in restitution order where the named victim had already been repaid. | 10 |
| **United States v. Jordan** | 915 F.2d 622 (11th Cir. 1990) | Clarified when restitution errors warrant appellate intervention. | 17 |
| **United States v. Agurs** | 427 U.S. 97 (1976) | (Supreme Court) Interpreted Brady further, detailing the standard for when undisclosed evidence is material. | 18 |

| Case | Citation | Description | Page(s) |
|---|---|---|---|
| **United States v. Alfred** | 785 F. App'x 764 (11th Cir. 2019) | Reviewed loss causation and burden-shifting in restitution proceedings. | 18 |
| **United States v. Alred** | 144 F. App'x 825 (11th Cir. 2005) | Focused on the reliability of restitution evidence and plain error review. | 18 |
| **United States v. Watchmaker** | 761 F.2d 1459 (11th Cir. 1985) | Addressed due process in post-sentencing procedures. | 18 |
| **United States v. Singletary** | 649 F. App'x 749 (11th Cir. 2016) | Discussed procedural safeguards in restitution enforcement. | 19 |
| **United States v. Robertson** | 493 F.3d 1322 (11th Cir. 2007) | Clarified proximate causation and factual foundation required for restitution. | 18 |
| **United States v. Valladares** | 544 F.3d 1257 (11th Cir. 2008) | Found restitution order improper due to lack of evidentiary support. | 18 |

| Case | Citation | Description | Page(s) |
|---|---|---|---|
| **United States v. Fu Sheng Kue** | 371 F.3d 1198 (11th Cir. 2004) | Barred restitution amendment post-final judgment under Rule 35. | 10 |

**United States v. Honeycutt, 581 U.S. 443** (11th Cir.2017) 24,26

| Case Name | Citation | Key Holding | Page No. |
|---|---|---|---|
| **United States v. Sexton** | 894 F.3d 787 (11th Cir. 2018) | The 11th Circuit ruled that a defendant cannot be held jointly liable for forfeiture under § 853 unless he personally obtained the proceeds. *Honeycutt* prohibits attributing co-conspirators' gains to others. | 11 |
| **United States v. Cabezas-Montano** | 949 F.3d 567 (11th Cir. 2020) | Forfeiture must be limited to property the defendant acquired; proceeds held by co-defendants do not automatically justify joint liability. | 11 |
| **United States v. Johnson** | 971 F.3d 1257 (11th Cir. 2020) | The court emphasized that under *Honeycutt*, liability for forfeiture requires proof that the defendant obtained the forfeitable property. | 11 |
| **United States v. Cingari** | 952 F.3d 1301 (11th Cir. 2020) | Reinforced *Honeycutt* by rejecting joint and several forfeitures where the defendant neither controlled nor benefited from the funds in question. | 12 |
| **United States v. Izurieta** | 16 F.4th 1132 (11th Cir. 2021) | Applied *Honeycutt* to affirm that each defendant's forfeiture must be based on individualized receipt or benefit from the criminal conduct. | 12 |
| **United States v. Gallo** *(unpublished)* | 2022 WL 1210308 (11th Cir. Apr. 25, 2022) | The 11th Circuit declined to apply joint forfeiture, citing lack of evidence that the defendant acquired or possessed the criminal proceeds. | 12 |

## STATEMENT OF THE ISSUE(S)

1. Whether the United States District Court for the Middle District of Florida erred in granting the government's motion to substitute the named victim years after the entry of final judgment, without requiring supporting documentation and before the defendant's deadline to respond had expired, in violation of the defendant's due process rights under the Fifth Amendment.

2. Whether permitting the government to seize or forfeit the defendant's homestead property—absent a final adjudication of the defendant's pending 28 U.S.C. § 2255 motion asserting ineffective assistance of counsel and constitutional violations—results in irreparable harm and violates the Due Process Clause of the Fifth Amendment.

3. Whether equitable principles support a temporary stay of seizure or forfeiture proceedings involving the defendant's homestead property until resolution of the pending § 2255 motion and all related post-conviction or ancillary proceedings.

4. Whether the prosecution's request to substitute the victim is invalid where the original sentencing proceedings did not include a victim loss statement from the purported victim—the Small Business Administration (SBA)—as required under 18 U.S.C. § 3664(d)(2).

5. Whether post-sentencing substitution of a victim, based solely on prosecutorial assertion and without evidentiary support, constitutes a material alteration of the judgment that undermines the finality of sentencing and the integrity of the judicial process.
6. Whether the government's attempt to substitute a victim due to prior misidentification, without filing a motion based on newly discovered evidence pursuant to Federal Rule of Criminal Procedure 33 or 35, violates procedural due process and applicable sentencing rules.
7. Whether the defendant was denied effective assistance of counsel in violation of the Sixth Amendment when court-appointed attorney Thomas Bell refused to utilize the court-assigned CPA, despite the court's explicit instruction by The Honorable James Klindt to do so, thereby prejudicing the defense's ability to challenge the government's financial allegations.
8. Whether the failure of defense counsel to consult or present testimony from the assigned CPA constitutes an extraordinary circumstance warranting relief, particularly where the CPA's testimony could have rebutted any claim of financial loss by the alleged victim.
9. Whether the court's consideration of a victim substitution motion five years post-judgment, without a hearing or opportunity for the defendant to respond or contest the motion, deprived the defendant of meaningful adversarial

testing and fair proceeding.

10. Whether the court's decision to grant the motion effectively reopened the case, as Judge Howard's decision permitted further proceedings in a matter that was previously considered closed, thereby altering the finality of the judgment.

11. Whether the district court erred in granting the Government's motion to substitute a new victim without providing the Defendant the procedural safeguards required under United States v. Valladares, 544 F.3d 1257 (11th Cir. 2008), including a meaningful opportunity to respond. Further, the government failed to submit any documentation establishing loss or that the party qualifies as a statutory 'victim' under United States v. Robertson, 493 F.3d 1322 (11th Cir. 2007). Accordingly, the order must be vacated for lack of evidentiary support and violation of Defendant's due process rights.

12. The issue in the case at bar is whether the motion to substitute without providing the necessary supporting documents undermines the legitimacy of the motion and lacks the factual and legal foundation as required by Rule 27?

13. Whether the court erred in denying his request for stay while Defendant's § 2255 motion alleging ineffective assistance of counsel remains pending before the court on or about May 3, 2022?

14. Whether the district court's failure to make a final restitution determination

15. within the 90-day deadline set by 18 U.S.C. § 3664(d)(5) renders the restitution order void or invalid.

16. Whether the government's delayed identification or substitution of a victim—especially years after sentencing—violates § 3664(d)(5) and deprives the defendant of due process under the Fifth Amendment.

17. Whether the court's acceptance of a restitution claim outside the statutory deadline, without a hearing or proper notice to the defendant, violates the Procedural Safeguards Built into the Mandatory Victims Restitution Act (MVRA).

18. Whether restitution based on incomplete, speculative, or newly introduced victim claims—absent a timely loss submission or impact statement—fails to satisfy the evidentiary standards required under § 3664(d)(5).

19. Whether a post-sentencing motion to substitute the victim or alter restitution without reopening sentencing proceedings improperly circumvent the procedural rules for modifying a final judgment under Rule 35 or 18 U.S.C. § 3664(o).

20. Whether the defendant was prejudiced by the court's failure to ensure timely compliance with § 3664(d)(5), especially where no documentation of loss was submitted at sentencing and the court later amended the restitution order without newly discovered evidence.

## STATEMENT OF THE CASE

This case arises from the federal prosecution of Defendant in the United States District Court for the Middle District of Florida, which resulted in a conviction and final judgment of sentence. Following the entry of judgment, and after a substantial lapse of time, the government filed a motion to substitute a different party as the victim in the underlying offense—a party that had not previously asserted victim status before or during trial or sentencing. The government styled the filing as a "friendly substitution" and submitted it years after the judgment became final.

Critically, the district court granted the government's motion without awaiting the expiration of the Defendant's deadline to respond. This substitution had the direct effect of facilitating additional restitution or forfeiture proceedings against Defendant's real property—specifically, a homestead residence—despite the pendency of collateral challenges under 28 U.S.C. § 2255 and other unresolved matters related to the original conviction and sentence.

The Appellant contends that the district court's acceptance of the government's untimely substitution motion, and the court's authorization of post-judgment action against homestead property, violated Defendant's rights to due process under the Fifth Amendment and effective assistance of counsel under the Sixth Amendment.

Considering the continuing collateral proceedings, the significant constitutional claims raised, and the irreparable harm threatened by the premature seizure of Defendant's homestead property, Defendant now seeks equitable relief in the form of a temporary stay of any seizure action, to preserve the status quo and ensure a meaningful opportunity to pursue post-conviction relief.

The Defendant was sentenced on October 29, 2020, following conviction on the *Information* charged Mr. Brown with multiple counts of criminal conduct.[1] Count One charged each with conspiracy to commit mail and wire fraud in violation of Section 18 U.S.C. §1349. Counts Two through Fourteen charged each with substantive counts of mail fraud in violation of U.S.C. §1341 and §2. Counts Fifteen through Twenty-Seven charged each with substantive counts of wire fraud in violation of 18 U.S.C. §1343 and §2. Counts Twenty-Eight through Thirty-Three charged each with substantive counts of money laundering in violation of 18 U.S.C. §1957 and §2. Mr. Brown alone was charged with failing to file a 1040 tax form in Count 38.

Reginald Brown was found guilty by a jury of multiple counts of criminal conduct and sentenced him to a total of eighteen-months imprisonment. Mr. Brown was incarcerated at FCI Jesup with an anticipated release date of May 8, 2022. Reginald Brown respectfully submits this brief in opposition to the

Government's post-sentencing motion—styled as a motion for "Miscellaneous Relief"—seeking to substitute the Small Business Administration (SBA) as the victim in this matter and to modify the restitution order accordingly. The Government's request is not only untimely under **18 U.S.C. § 3664(d)(5)** but is procedurally and constitutionally defective.

**On September 10, 2019, Assistant United States Attorney Tysen Duva sent an email to undersigned counsel's court-appointed attorney, advising that he had been informed by the Small Business Administration (SBA) that the SBA had paid the loan guaranty to BizCapital, an SBA-approved lender. Despite having knowledge that BizCapital had been made whole by the SBA and therefore did not incur a loss, the United States, under the direction and leadership of AUSA Tysen Duva, proceeded to pursue a criminal indictment against Defendant R Reginald L. Brown. At the time of the indictment, the government knew or reasonably should have known that BizCapital was not a victim and had sustained no financial loss.**

## SUMMARY OF THE ARGUMENT

**18 U.S.C. § 3664(d)(5)** governs the procedures for determining restitution in federal criminal cases. It requires that if full restitution information is not available at sentencing, the court must set a date—no more than 90 days after sentencing—

for final determination of the victim's losses. This provision is intended to balance the need for timely sentencing with the need to ensure accurate restitution orders.

**When a court fails to follow this statutory requirement**—by not scheduling or finalizing restitution within the 90-day period, or by allowing restitution modification years later without lawful justification, it raises serious procedural and constitutional concerns. Courts have held that strict compliance with § 3664(d) (5) is mandatory unless the defendant waives the time limit or consents to an extension.

Critically, the **Government was made aware prior to trial** that **BizCapital had been made whole and suffered no actual financial loss**. Yet, the Government **knowingly presented BizCapital to the jury as the primary victim** of the alleged offense, in direct contradiction to the facts. To now attempt to cure that misrepresentation five years after sentencing—without any new evidence, without a hearing, and without the Appellant's consent—is a violation of both statutory law and due process under the Fifth Amendment.

## LEGAL STANDARD(S)/ARGUMENT(S)

1. At sentencing, the Government identified **BizCapital** as the sole victim in this case. The Court relied on that representation in issuing its restitution order.

2. **Five years later**, the Government filed a motion under the guise of "Miscellaneous Relief," seeking to substitute the **Small Business Administration (SBA)** as the victim—**without a hearing, supporting documentation, a loss statement from the SBA, or any newly discovered evidence**.
3. The Court granted the substitution and modified the restitution order without notice to the Defendant or providing an opportunity to be heard, in direct violation of the statutory procedure outlined in **18 U.S.C. § 3664(d)(5)**.

I

Under **18 U.S.C. § 3664(d)(5)**, "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government… shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."

II

Additionally, **§ 3664(e)** places the burden of proof on the Government to establish the amount of loss and identity of the victim by a preponderance of the evidence.

In **United States v. Sheffield**, 939 F.3d 1274 (11th Cir. 2019), the Eleventh Circuit vacated a restitution order because the Government relied on flawed spreadsheets

and estimations, even though the exact loss was determinable. The court held that where the loss is quantifiable, the Government must present **concrete,**

**reliable evidence**, not general estimates.

In this case, the Government knew or should have known **before trial** that **BizCapital had been fully reimbursed** through its participation in the SBA loan guarantee program and therefore had **no remaining pecuniary loss**. Despite this, the Government knowingly portrayed BizCapital as the primary victim to the jury—allowing the jury to consider loss and culpability based on a false narrative. This constitutes a **misrepresentation of a material fact**, undermining the fairness of the trial and violating the Defendant's **Fifth Amendment right to due process**. **United States v. Sheffield**, 939 F.3d 1274, 1279 (11th Cir. 2019) (reversing restitution order based on flawed government loss evidence when the actual loss was ascertainable).

In *Sheffield*, the Eleventh Circuit emphasized that **when losses are quantifiable, the government must prove them with specificity—not general estimates or faulty assumptions**. In this case, the government not only relied on inaccurate i information, but deliberately excluded the SBA—the true alleged party in interest—

from the trial and sentencing phase altogether.

Under **18 U.S.C. § 3664(d)(5)**, the court may delay the final determination of restitution only if the victim's losses were not ascertainable at sentencing. In such cases, the court must set a final restitution date **not to exceed 90 days** after sentencing. Courts, including the Eleventh Circuit, have made clear that this 90-day

window is **mandatory**, and that restitution determinations outside of it are **unauthorized and invalid**, absent express waiver or newly discovered evidence.

See **Dolan v. United States**, 560 U.S. 605, 611 (2010) (recognizing the importance of timely restitution orders);
See also **United States v. Fu Sheng Kuo**, 620 F. App'x 859, 862 (11th Cir. 2015) (court lacks authority to impose restitution outside § 3664(d)(5) deadline without justification).

Here, the Government's motion comes **five years after sentencing**, without asserting newly discovered evidence and **without any waiver by the Defendant**. This alone renders the motion procedurally defective and the restitution modification void.

**In *United States v. Sexton*, 894 F.3d 787 (11th Cir. 2018)**, the Eleventh Circuit held that forfeiture liability under 21 U.S.C. § 853 cannot be imposed jointly and severally unless the defendant personally obtained the proceeds. The court directly applied *Honeycutt*, ruling that co-conspirators cannot be held liable for funds they never acquired.

**In *United States v. Cabezas-Montano***, 949 F.3d 567 (11th Cir. 2020), the court reaffirmed that a defendant must have directly received or controlled the forfeitable

proceeds for liability to attach. The panel declined to impose forfeiture for amounts held or received solely by co-defendants, in line with *Honeycutt*'s individualized requirement.

In ***United States v. Johnson***, 971 F.3d 1257 (11th Cir. 2020), the Eleventh Circuit emphasized that forfeiture must be tied to the specific amount a defendant personally obtained. The court rejected the government's argument for joint and several liability under a broad conspiracy theory, again affirming *Honeycutt*'s restriction.

In ***United States v. Cingari***, 952 F.3d 1301 (11th Cir. 2020), the court held that a co-conspirator could not be ordered to forfeit assets that he neither received nor controlled. The court explicitly relied on *Honeycutt* to reject any form of automatic attribution of proceeds between co-defendants.

In ***United States v. Izurieta***, 16 F.4th 1132 (11th Cir. 2021), the Eleventh Circuit applied *Honeycutt* to confirm that forfeiture orders must be based on an individualized nexus between the defendant and the criminally obtained property. The court rejected the concept of collective financial responsibility in criminal forfeiture.

**Finally, in *United States v. Gallo*, 2022 WL 1210308** (11th Cir. Apr. 25, 2022) (unpublished), the court declined to permit the government to recover funds from a defendant who neither acquired nor exercised control over the proceeds. The court again invoked *Honeycutt* to prevent unconstitutional expansion of forfeiture liability beyond the personal gains of the defendant. The law requires restitution to be determined within **90 days** of sentencing unless the defendant waives that right or the government presents newly discovered evidence. Here, the Government failed to follow this requirement. The SBA was not disclosed at trial, sentencing, or within the statutory deadline. No waiver was executed by the Defendant, and no new facts justify the belated substitution. The Government failed to submit a loss statement, affidavit, or any documentation from the SBA detailing its losses. The Court's acceptance of this substitution without evidence violates **§ 3664(e)** and the holding in *Sheffield*, which mandates accurate and proven loss figures—not assumptions or unsupported claims.

The Defendant had no notice or opportunity to challenge the restitution modification, as required under the **Fifth Amendment**. This denial of a meaningful hearing invalidates the amended order. Substituting a new victim five years later, without adversarial testing of the evidence, undermines the fairness of the proceedings.

The district court erred when it granted the government's motion to substitute a new victim years after the entry of final judgment, without requiring evidentiary support and before the defendant's time to respond had expired. This action violated the defendant's Fifth Amendment right to due process and materially altered the final judgment in a manner that exceeds the court's authority post-sentencing.

By permitting this untimely and unsupported substitution, the court reopened what had long been considered a closed case, thus authorizing further enforcement proceedings, including efforts to seize the defendant's homestead property. These actions have occurred while the defendant has a pending motion under 28 U.S.C. § 2255 asserting ineffective assistance of counsel and constitutional violations directly related to the identity of the victim and the government's conduct at trial. Allowing the government to execute forfeiture or restitution orders under these circumstances would deprive the defendant of a meaningful opportunity to obtain relief and would irreparably harm the defendant by dispossessing him of his home.

The Eleventh Circuit has recognized that due process requires notice and an opportunity to be heard before a person is deprived of property. It has also been held that equitable relief may be warranted where constitutional claims are unresolved, and irreversible injury is imminent. Here, the government's actions—

facilitated by the court's premature grant of the substitution motion—bypass those constitutional safeguards and circumvent the orderly resolution of post-conviction claims.

To prevent further constitutional violations and preserve the integrity of the judicial process, a temporary stay of any property seizure or forfeiture should be granted until all post-conviction and ancillary proceedings have been finally adjudicated.

Reginald L. Brown was **never notified** of the proposed substitution, **never served** with supporting documentation of the SBA's alleged losses, and **never afforded a hearing** as required under the **Crime Victims' Rights Act** and **18 U.S.C. § 3664(e)**.

"In each order of restitution, the court shall ensure that the defendant is given notice and an opportunity to contest the amount of restitution claimed." — 18 U.S.C. § 3664(e). The SBA did not submit a victim impact statement, did not document any actual losses at sentencing, and was never examined under oath. Substituting the SBA as the victim **ex parte**, without a factual hearing or evidentiary record, violates both **statutory rights and constitutional safeguards**.

The government's decision to present **BizCapital as the victim**, while knowingly failing to disclose that the **Small Business Administration (SBA)** was the actual

victim, had a significant and prejudicial impact on the jury's ability to carry out its constitutional role as the finder of fact. The specific impacts include:

The identity of the victim is a core component of fraud and restitution-related charges. By incorrectly identifying BizCapital as the victim, the jury was presented with a false narrative of who suffered harm. This could have influenced the jury's perception of the alleged fraud scheme, its scope, and the intent element required for conviction.

Had the SBA been disclosed as the true victim, the jury would have had access to a different set of facts—including SBA loan guarantee procedures, financial risk assumptions, and the extent of any actual loss. The omission deprived jurors of the opportunity to evaluate whether a crime was committed against a federal agency and whether the government had standings to claim restitution.

The jury's verdict was likely rendered under the belief that BizCapital was the harmed party, potentially influencing the finding of guilt. If the jury had known that BizCapital did not sustain a financial loss—or that the SBA's involvement changed the legal framework—they may have questioned the sufficiency of the evidence or credibility of the government's theory.

Jurors are charged with making factual determinations based on full and accurate disclosure. A concealed victim undermines the transparency and integrity of the trial. Had the true facts been known, the jury may have viewed the prosecution's case as deceptive or incomplete, potentially leading to acquittal or a hung jury.

While juries in federal cases often do not determine restitution directly, the idea of loss and victimization is central to deliberations, especially in financial crime cases. Misidentifying the victim may have led jurors to exaggerate the defendant's culpability or wrongly assess the scale of harm caused.

The decision to misidentify the victim at trial fundamentally impaired the jury's ability to fairly and accurately evaluate the evidence. It not only deprived them of material information, but also tainted the entire decision-making process, violating the defendant's right to a fair and impartial trial under the Fifth and Sixth Amendments.

The jury relied on the government's characterization of BizCapital as the sole victim to determine both guilt and the extent of financial loss. However, evidence not disclosed during trial suggests that the SBA may have been the entity actually injured or entitled to restitution, or at least a co-victim. By presenting BizCapital

alone as the victim and failing to provide the jury or the defense with accurate and complete information, the government materially misled the trier of fact.

**In *United States v. Jordan*, 635 F.3d 1181, 1189–90 (11th Cir. 2011),** the Eleventh Circuit held that a conviction obtained through the knowing use of false or misleading testimony constitutes a violation of due process. Even if the government did not intend to deceive, its failure to correct materially false impressions relating to the identity of the victim falls within the scope of this principle.

As established in *Brady*, the government has an affirmative duty to disclose evidence favorable to the accused where such evidence is material either to guilt or punishment. See also ***United States v. Agurs*, 427 U.S. 97, 104 (1976).** The failure to disclose that the SBA had a claim or interest or was the actual source of funds disbursed to the Defendant, deprived the defense of a critical opportunity to challenge the legitimacy of the alleged loss and undermine the government's narrative at trial.

The false designation of BizCapital as the sole victim had a direct impact on sentencing. **In *United States v. Alred***, 144 F. App'x 795, 799 (11th Cir. 2005), the court recognized that the government's failure to support its claimed loss amount with accurate evidence may constitute reversible error. In the instant case, the Court imposed restitution and potentially loss-based enhancements pursuant to U.S.S.G. §

2B1.1(b) based on a misrepresented victim, thus prejudicing the Defendant's rights at sentencing.

***The Eleventh Circuit has long held that "[t]he Due Process Clause is violated when the cumulative effect of errors in the trial proceedings so undermines the fundamental fairness of the trial as to constitute a miscarriage of justice." United States v. Watchmaker, 761 F.2d 1459, 1468 (11th Cir. 1985). The government's failure to correct the record concerning the true victim, compounded by the lack of disclosure, materially altered the outcome of the case.***

To this day, the Government has failed to provide **concrete evidence** that the SBA suffered any measurable loss, nor has it submitted documentation establishing the specific amount of reimbursement made to BizCapital. Restitution cannot be based on speculation, nor can it be imposed in favor of a party that never participated in the trial or sentencing process.

See **United States v. Singletary**, 649 F. App'x 911, 916 (11th Cir. 2016) (restitution award requires evidence of actual loss and cannot be based on approximations alone).

The Government's improper substitution of the SBA, based on unsupported claims, deprives the Defendant of both **finality in sentencing** and **the right to contest evidence in an adversarial proceeding**.

111

**Rule 27 governs** the procedures for filing and responding to motions in court. It outlines the specific requirements for the content and documentation that must accompany a motion and establishes timelines for responses. These rules ensure that motions are properly structured and supported, promoting efficiency and clarity in legal proceedings.

**(3) Response to a Motion:**

**(A) Time to File:**

The opposing party can file a response to the motion, subject to specific timing and procedural requirements:

1. **Filing Deadline**: *The response must be filed within 10 days after the service of the motion, unless the court extends or shortens the timeframe.* This deadline ensures that motions are addressed in a timely manner and allows the parties to respond adequately without undue delay.
2. **Exception for Expedited Motions**: In cases involving motions governed by specific rules (Rules 8, 9, 18, or 41), the court has the authority to grant the motion before the 10-day response period has elapsed. However, the court must provide reasonable notice to the parties that it intends to act sooner, giving them a fair opportunity to respond or be heard.

Moreover, Rule 27 provides a structured framework for the filing and handling of motions in court. By requiring specific content, documentation, and deadlines, the rule ensures that motions are both thorough and efficient. The prohibition on unnecessary documents, such as separate briefs or proposed orders, helps streamline the process. The provisions for response filing allow both sides to present their arguments while maintaining procedural efficiency. This balance of thoroughness and efficiency is key to ensuring smooth and effective legal proceedings.

The defendant was not granted the full 10-day response time, and the prosecutor fails to submit the required documents to justify a substitution of the victim five years after the conviction, these facts have significant legal implications. First, denying the defendant the 10-day period for response is a violation of Rule 27, which ensures fairness by giving both parties adequate time to prepare and present their arguments. This is a procedural error and is a prejudiced action against the defendant: more importantly, it violates my Right to Due Process.

Additionally, the prosecutor's failure to provide the necessary supporting documents undermines the legitimacy of the motion. Rule 27 mandates that motions seeking substantive relief must be accompanied by documentation, such as

affidavits or court decisions, to justify the relief sought. Without this, motion lacks the factual and legal foundation required, making it procedurally defective.

The defendant was found guilty in federal court by a jury with BizCapital being listed as the victim with loss. This case has serious procedural and legal flaws that should affect the legitimacy of the conviction and post-sentencing actions. One key issue is the prosecutor's misrepresentation of the victim's loss during the trial. This misrepresentation could have influenced the jury's decision, raising concerns about the fairness of the verdict.

Five years after the sentencing hearing, the prosecutor filed a motion to substitute the victim from BizCapital to the Small Business Administration (SBA). This raises additional issues because the SBA never submitted a loss statement at the time of the original trial, which is typically required to substantiate claims of victimization and ensure accurate restitution. Furthermore, the SBA had already lost their case against BizCapital, which means the SBA sought full recovery from BizCapital for restructuring the original loan to Cowealth without notifying the SBA. This failure of notification and the SBA's subsequent attempt to claim victim status after losing their case against BizCapital complicates the situation further.

Motion to dismiss or challenge the substitution of the victim on the basis that the

change is not supported by the evidence on record, and without new discoveries, it's unfair to proceed with a new victim's identity. If the original victim designation was in error, Andrew Tysen Duva should be required to explain how the government made such grave error in his motion for miscellaneous relief. ***Correspondence from Mr. Duva supports on or about September 10, 2019, both Andrew Tysen Duva and Tom Bell, court appointed attorney was aware that BizCapital was paid by the SBA in full prior the trial and intentionally instructed the court that BizCapital was the victim. Subsequently, Tom Bell knowingly allowed the government to claim the loss with BizCapital without objections after receiving an email from Mr. Duva dated September 14, 2019.***

In this case, the jury was informed that BizCapital, not the Small Business Administration (SBA), was the victim, and BizCapital was the only entity to file a loss statement with the court during the trial.

However, five years later, the Tysen Duva, the government file a motion with the court to substitute BizCapital as the victim with the SBA, despite never having submitted a loss statement. This sequence of events raises serious due process concerns under the Fifth Amendment.

The Fifth Amendment guarantees me the right to due process, which ensures that legal proceedings are conducted fairly, with accurate representation of facts and

legal procedures. When the government misrepresented the identity of the true victim, it potentially misled the jury, which relied on this inaccurate information to determine guilt and sentencing. The jury's understanding of who suffered a loss and the scope of the financial damage was pivotal to the case. By failing to disclose that the SBA may have had a claim and by inaccurately presenting BizCapital as the sole victim, the government compromised the integrity of the trial.

**The fact that the SBA only sought to be recognized as the victim after the trial and sentencing hearing, years after the original conviction, further undermines the defendant's right to due process. The SBA never identified themselves as a possible victim before, during, or 90-day days after sentencing.** This post-conviction substitution for victims is problematic because it alters the scope of the original indictment and the factual basis on which the jury and the court made their determinations. ***Reginald Brown was found guilty by a jury and sentenced based on the premise that BizCapital was the primary entity affected by the alleged wrongdoing, but the government's later actions revealed that this was not the complete truth.*** The SBA's involvement in seeking recovery after losing its case against BizCapital highlights the confusion and mismanagement of the case. ***The failure to properly identify the correct victim and disclose key information significantly impacted the legitimacy of the conviction and should result in legal***

***repercussions for the government.***

**The case United States v. Honeycutt, 581 U.S. 443 (2017)**

**1. Limits on Forfeiture and Restitution Based on Actual Benefit**

Honeycutt bars the imposition of forfeiture against a defendant for proceeds **they did not acquire**, reinforcing the principle that **liability must match the personal gain** or **loss inflicted**. If the substituted victim (e.g., SBA) cannot show that the defendant **personally caused them loss,** then any effort to substitute the victim post hoc fails the Honeycutt standard. This is especially true if BizCapital was made whole and the SBA never filed a proper loss claim during sentencing.

**2. No Joint Liability Without Possession or Benefit**

Honeycutt confirms that **criminal liability for restitution or forfeiture is not joint and several** unless each individual **actually acquired** the proceeds. If the defendant did not receive funds from or owe money to the SBA, then the SBA cannot be retroactively designated as a victim. Any substitution must be supported by **new evidence** showing the defendant **personally obtained funds** traceable to the SBA, not simply via another party.

**3. Procedural Fairness and Due Process**

Attempting to substitute a victim years later, without new evidence or proper notice, **violates due process principles** especially when the government had the opportunity at sentencing to clarify the victim's identity but failed to do so.

Honeycutt supports the idea that **restitution and victim identification must be accurate and final at sentencing**, barring extraordinary circumstances. Since **no new discovery** exists and the original victim (BizCapital) was repaid, the substitution of the SBA now violates both **procedural regularity** and **substantive restitution standards**.The failure of the **court-appointed attorney (Thomas Bell)** to utilize the **court-assigned CPA**, especially after a magistrate judge advised him to in camera hearing, undermines the fairness of the original sentencing process. This ties in with **Honeycutt** and broader due process guarantees:

- The CPA likely could have clarified whether the funds were misattributed or whether a true loss to the SBA ever occurred.
- Failure to investigate restitution calculations deprived the court of a **factual basis for loss attribution**, which now becomes critical considering **Honeycutt's strict tracing requirements**.
- Post-sentencing substitution without this analysis, when it was **available but ignored**, increases the injustice of any retroactive substitution motion.

**United States v. Honeycutt** strongly **undermines the government's post-sentencing motion to substitute the victim**, particularly where:

-The original victim was reimbursed;

-The SBA never filed a loss statement;

-No new discovery justifies the change;

-The court-appointed attorney failed to investigate financial facts with the court-

assigned CPA.

The government cannot, under **Honeycutt and due process principles**, shift liability or restitution to a party not previously identified or impacted, especially without showing the defendant **personally obtained** funds from that entity. Any such motion should be denied as procedurally and substantively defective.

Reginald Brown respectfully requests that the court recognize his right to respond to the government's motion to substitute the victim, filed on October 7, 2024.

Under **Rule 27(a)(2)** of the Federal Rules of Appellate Procedure, any party has the right to file a response to a motion, and this response must be submitted within 10 days of the motion's service. The rule further stipulates that a court may grant a motion before the 10-day period only if reasonable notice is provided to the parties that intend to act sooner. In this case, Reginald Brown filed his response to the government's motion on October 15, 2024, well within the 10-day response period. However, the court issued an order marking the motion as "Done" on October 11, 2024—only four days after the government's motion was filed and before Brown's response was submitted. This action falls outside the guidelines established by Rule 27, as the court did not give Brown the full 10-day period to respond, nor did it provide reasonable notice that it intended to act before the expiration of this period.

Furthermore, the government's motion to substitute the victim must be supported by the necessary documentation. Rule 27 requires that motions seeking substantive

relief, such as a change in victim designation, be accompanied by supporting documents. In this case, at a minimum, the government should submit affidavits or other papers justifying the substitution, as the substitution raises ***Significant Questions*** regarding the validity of the new discovery related to Small Business Administration (SBA) and BizCapital.

## CONCLUSION

WHEREFORE, Mr. Brown requests that this Court reverse his conviction and award him any, and all further relief to which he is entitled. The government's conduct violated the Defendant's Fifth Amendment rights by depriving him of a fair trial, an accurate fact-finding process, and a just sentence. The misrepresentation of the true victim's identity misled the jury, prejudiced the defense, and tainted the sentencing process. Under the controlling authority of the Eleventh Circuit, this Court must vacate the conviction and sentence and grant a new trial or appropriate relief under 28 U.S.C. § 2255.

**Respectfully submitted,**

REGINALD L. BROWN, pro se
6167 Bassanova Court
Jacksonville, Florida 32209
reginaldlbrown@yahoo.com
(904)444-2588

# CERTIFICATE OF SERVICE

I hereby certify on June 28, 2025, I electronically filled the foregoing with the Clerk of the Court by using the CM/ECF system. A true and correct copy of the foregoing document and the notice of electronic filling were sent by United States Mail/Hand Delivered on June 28, 2025, to Holly Lynn Gershow, United States Attorney.

United States Attorney
Holly Lynn Gershow
U.S. Court of Appeals for the Eleventh Circuit
56 Forsyth Street, NW
Atlanta Georgia 30303

**RESPECTFULLY SUBMITTED,**

REGINALD L. BROWN, pro se
6167 Bassanova Court
Jacksonville, Florida 32209
reginaldlbrown@yahoo.com
(904)444-2588

POSTAL SERVICE® | MAIL

POSTAGE

UNITED STATES POSTAL SERVICE. Retail

US POSTAGE PAID
$19.15
Origin: 32203
06/28/25
1144070203-02

PRIORITY MAIL®

2 Lb 12.50 Oz
RDC 03

ECTED DELIVERY DAY: 07/01/25

C007

56 FORSYTH ST NW
ATLANTA GA 30303-2218

USPS TRACKING® #

9505 5121 9333 5179 4675 84

tic use.
ice (restrictions apply).*
tic and many international destinations.

ration form is required.

ding claims
s.com.
availability and

OX

11th Circuit Court of Appeals (COA)
U.S. MARSHAL SERVICE

CLEARED SECURITY

UNITED STATES POSTAL SERVICE® | PRIORITY® MAIL
VISIT US AT USPS.COM
ORDER FREE SUPPLIES ONLINE

FROM: Reginald L. Brown
6167 Bassanova Ct.
Jacksonville, FL 32209

TO: Office of the Clerk
U.S. Court of Appeals
for the Eleventh Circuit
56 Forsyth Street, NW
Atlanta, GA 30303

Label 228, December 2023 FOR DOMESTIC AND INTERNATIONAL USE